*453 . GRIFFIS, P.J.,
dissenting:
¶ 33. The question to be decided is: who is entitled to be paid $110,163.58, the amount of the remaining guaranteed annuity payments that were owed by PERS at the death of Marjorie Kahn’s designated beneficiary, Heather Vaughn? The majority concludes that Marjorie’s estate is entitled to the payment. I find that Heather’s heirs are entitled to the payment. Therefore, I respectfully dissent. > • •
FACTS;AND PROCEDURAL HISTORY
¶ 34. I disagree slightly with the majority’s version of the facts and procedural history. The majority makes it appear as if Kayla Vaughn was the only party in this litigation that argued Mississippi Code Annotated section 25-11-117.1 governed the outcome of this appeal. Such was not the case. PERS’s executive director, its staff, Board of Trustees, and the circuit court all determined that section 25-11-117.1 governed this decision. Indeed, no party or court has argued or considered that the now-repealed version of Mississippi Code Annotated section 25 — 11—115(1) (Supp. 1999) may govern the outcome of this litigation until now.
1135. The facts are not in dispute.
¶ 36. Marjorie retired on PERS disability retirement, effective November 1,1999. She elected to receive benefits pursuant to Option 4-B under Mississippi Code Annotated section 25 — 11—115(1)'" (Supp.1999). At that time, Option 4-B read:
A reduced retirement allowance shall be continued throughout the life of the re- • tirant, but with the further guarantee of payments to the named beneficiary, beneficiaries, or to the estate, for a specified number of years certain. -¡If the retired member or-the last designated beneficiary receiving annuity payments dies prior to receiving all guaranteed ’ payments ■due, the actuarial equivalent of the remaining, payments would be paid to the estate of the retired as intestate proper-. ty. . .
Under the first sentence of this option, Marjorie selected a twenty-year period. As a result of her decision, Marjorie’s benefits under Option 4B were to, end on October 1,2019.
¶ 37- Marjorie designated Heather, her daughter, as her beneficiary. Marjorie could have also named a contingent beneficiary in the event of Heather’s death, but chose not to name a contingent beneficiary
¶ 38. Marjorie died January 1, 2000. At that time, PERS-had not paid any of the benefit payments. As a result, PERS began to make payments to Heather as Marjorie’s designated Option 4-B beneficiary.
¶ 39. Heather died in August 20Í1. PERS continued to pay monthly benefits to Heather until her death.
¶ 40. Upon receipt of notice and verification of Heather’s death, PERS checked Marjorie’s file, at PERS to see if she ."had named a contingent beneficiary in the event her primary beneficiary died before the expiration of the twenty-year period. If Marjorie had named a contingent beneficiary, PERS would have paid the remaining monthly benefits. to . that person. PERS’s review determined that Marjorie had:not named a contingent beneficiary. Because of Marjorie’s death, Heather’s death, and the lack of a contingent beneficiary, PERS had to identify to whom the remaining benefits should be paid.
1T41. PERS determined that Marjorie’s file did not include the name of any next-of-kin. PERS sent a notice to Marjorie’s family that- informed them of Heather’s death and stated that .the remaining balance would be paid to Marjorie’s statutory *454 successors under Mississippi Code Annotated section 25-11-117.1(1).
¶ 42. Toni Vaughn, Heather’s stepmother, contacted PERS on behalf of her daughter, Kayla. Kayla was Heather’s half-sister. Kayla and Heather had the same father, but Kayla was not related by blood to Marjorie. Kayla claimed that the remaining annuity benefits should be paid to her as Heather’s next-of-kin and not to Marjorie’s heirs. Through counsel, Kayla requested a; hearing pursuant to Mississippi Code Annotated section 25-11-120, if PERS maintained its position that payment should be paid to Marjorie’s heirs pursuant to section 25-11-117.1(1).
¶ 43. By letter dated November 8, 2011, Pat Robertson, PERS’s executive director, sent an administrative decision letter to Kayla’s attorney that stated PERS’s decision:
Section 25-11-117.1(1) applies to benefits that are the property of the deceased member and that become payable to the successors of the deceased member in the absence of a named beneficiary. Section ... 25-11-117.1(2) applies specifically to monthly benefits due and payable to a beneficiary who dies before he or she has the opportunity to negotiate or cash a check or checks issued before his or her death. Because monthly benefits are no longer payable to a beneficiary receiving monthly benefits upon his or her death, no further benefits were payable to Ms. Heather Ann Vaughn upon her death; thus, no benefits are payable to Ms. Heather Ann Vaughn’s successor(s) from PERS.
¶ 44. Kayla appealed the decision to the PERS Board of Trustees. A hearing was held before the Claims Committee of the Board of Trustees on January 24, 2012.
¶ 45. Bob Rhoads, PERS senior policy advisor, testified that section 25-11-117.1 was actually enacted to be effective July 1, 2000, after Marjorie’s death. Prior to that time, pursuant to section 25-11-115(1), “Option 4B provided that the present value of the remaining payments would be payable to the estate of the deceased member or retiree....” Rhoads also testified that he was employed by PERS in 2000 when the PERS Board of Trustees requested the new legislation as part of its proposed legislative package for that year. The request was made because the previous language gave PERS no alternative but to pay the present value of remaining benefits to the member/retiree’s estate, which often required the opening or reopening of an estate many years after the death of the member/retiree. Rhoads stated, “it was the intent of the staff and the Board to not change the fact that the present value of the remaining payments [was] due to the successors of the deceased member or retiree. We just wanted to find a more convenient way for the successors to make a claim directly with PERS rather than through an Estate.”
¶ 46. Following the hearing, the Claims Committee found “that the actuarial equivalent of the remaining payments are to be paid to the statutory successors of the deceased member/retiree, Marjorie Ann Kahn, as listed in Section 25-ll-117.1(l)[,] because the designated beneficiary, Heather Ann Vaughn, was deceased when such benefits would have become payable, and Ms. Kahn did not designate a contingent beneficiary.”
¶ 47. Pursuant to Mississippi Code Annotated section 25-11-120(2) (Rev.2010), Kayla appealed the PERS decision to the Hinds County Circuit Court. The circuit court granted Kayla’s request for a preliminary injunction and enjoined PERS from distributing funds from Marjorie’s account during the pendency of the appeal. Then, on June 21, 2013, based on the briefs submitted, the circuit court entered its *455 opinion and order that affirmed the decision of PERS.
ANALYSIS

I. Marjorie’s Intent

¶48. In its first section, the majority determines that “[bjased on Option 4-B— as that option existed in 1999 — Marjorie’s clear intent was that, should she and Heather both die before all guaranteed payments were made, Marjorie’s intestate estate — i.e., Marjorie’s statutory heirs— would receive the actuarial equivalent of the remaining payments.” To decide Marjorie’s “clear intent,” the majority sua sponte decided that the pre-amendment version of section 25-11-115(1)' would govern the outcome of this case even though no party has argued it as governing law.
¶49. PERS does not make this argument. Instead, PERS’s supplemental brief, which asked whether the repealed statute applied, stated: “PERS would argue that the 2000 amendment to Miss. Code Ann. § 25-11-115 and the enactment of § 25-11-117.1, as it has been interpreted by PERS, do[ ] not deprive [Marjorie] of a significant contractual right.” PERS argues that the post-amendment, current version of section 25-11-117.1 governs.
il 50. Nevertheless, the majority cites’ In re Estate of Dillon, 632 So.2d 1298, 1303-04 (Miss.1994), and Public Employees’ Retirement System v. Porter, 763 So.2d 845, 849-50 (¶¶ 14-16) (Miss.2000), for the general legal proposition that a PERS statute “cannot be applied in a way that defeats the clear intention of the deceased retired member.” The majority does not explain how these cases are applicable or relevant. I am of the opinion that these case's are taken out of context or are factually distinguishable. Neither is directly on point.
¶ 51. Indeed, PERS’s argument that the amendment to section 25-11-115(1) “does not deprive [Marjorie] of a significant contractual right” should indicate that this Court should-not interject its research and legal-reasoning to decide this case. The majority'’ says- it knows • Marjorie’s “clear intent,” but I do not. To me, it is important'that-throughout this entire dispute, PERS’s staff, PERS’s executive director, PERS’s Board of Trustees, and the circuit court judge have all relied on and based their decision on their interpretation of Mississippi Code Annotated section' 25-11-117.1(1). This was- the result of their reliance on the amended version of section 25-11-115(1), which referred to section 25-11-117.1(1) for resolution of this payment dispute.
¶ 52. Furthermore, the pre-amendment language of Option 4-B does not decide our interpretation' because the Legislature amended the statute without a savings clause. The effect of the Legislature’s act was to'abrogate the pre-amendment statutory language as if it never existed. The Mississippi Supreme Court summarized this general rule as follows:
Many decisions in this state have affirmed the rule,' which generally prevails, that the effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and that a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause....
The result of this rule is that every right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute, unless carried to final judgment before the repeal or modification, save that *456 no such, repeal; or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right.
Stone v. Indep. Linen Serv. Co., 212 Miss. 580, 586-87, 55 So.2d 165, 168 (1951) (internal quotations omitted); see also USP-CI of Miss., Inc., v. State, 688 So.2d 783, 786-87 (Miss.1997) (“An amended act is ordinarily construed as if the original, statute had been repealed, and as far as any action after the adoption of the amendment is concerned, as if the statute had been originally, enacted in .its amended form”). - , .
¶53. I recognize that, on October-11, 1999, Marjorie executed her application for disability benefits, and she selected Option 4-B with twenty years certain. She died less than three months later. The law in effect.at that time, Mississippi Code Annotated section 25-11-115(1), Option 4-B (repealed 2000), provided that “[i]f the retired member or the last designated beneficiary receiving annuity payments dies prior to receiving all guaranteed payments due, the actuarial equivalent of the remaining payments would be paid to the estate of the retired as intestate property.”
¶ 54. In fact, as of Marjorie’s .death, the Legislature determined that the deceased member’s estate would be the catch-all recipient for Option 4-B benefits remaining after the death of the member and her last designated beneficiary. However, this catch-all provision did not apply at Marjorie’s death because her beneficiary was still alive. Based' on Marjorie’s election, PERS was obligated to pay Heather $922.63 each month until her last check on October 1,2019.
¶ 55. Just before Heather began to receive the Option 4-B benefits, the Legislature amended the statutory scheme under which these benefits were paid. The statutory change became effective on July 1, 2000. Mississippi Code Annotated section 25-11-115(1) was amended, and Mississippi Code Annotated section 25-11-117.1 was created. The amended language of section 25-11-115(1) was changed to read:
A reduced retirement allowance shall be continued throughout the life of the re-tirant, but with the further guarantee of payments to the named beneficiary or beneficiaries for a specified number of years certain. If the retired member or the last designated beneficiary both die before receiving all guaranteed payments due, the aduanal equivalent of the remaining payments shall be paid under Section 25-11-117.1(1).
(Emphasis added). The Legislature changed the catch-all provision. Effective July 1, 2000, if both the member and last designated beneficiary died before the expiration of the sum-certain period, PERS was directed to pay the remaining benefits pursuant to Mississippi Code Annotated section 25-11-117.1(1). There was no savings clause in the. legislation; The legislation did not distinguish between members who joined PERS before or after the effective date of July 1, 2000. PERS, the sponsor of this legislation, admits this fact.[4] And the majority does not address it. What is clear is that the Legislature directed that section 25-11-117.1 be applied to any instance occurring after July 1, 2000, where benefits remain after the *457 death of both the member and the member’s last designated beneficiary.
¶ 56. Throughout this matter, until now, the parties agreed that the current Mississippi Code Annotated sections 25-11-115(1) and 117.1 were the applicable statutes and governed the outcome of this dispute. They, however, disagreed as to the proper interpretation of those statutes. I disagree with and dissent from the' majority’s decision to apply the now-repealed version of section 25-11-115(1).

II. PERS’s Interpretation

¶ 57. The majority also includes an alternate finding as to the resolution under section 25-11-117.1(1). I disagree with and dissent from this interpretation.
¶58. On October 11, 1999, Marjorie made a decision'as to her PERS benefits when she signed her application for disability benefits and chose Option 4-B. At Marjorie’s death, PERS began to pay Heather the guaranteed monthly benefits.
¶ 59. At the time of Heather’s death, section 25-11-115(1), Option 4-B provided:
A reduced retirement allowance shall be continued throughout the life of the re-tirant, but with the further guarantee of payments to the named beneficiary or beneficiaries for a specified number of years certain. If the retired member or the last designated beneficiary. both die before .receiving all. guaranteed pay- .. ments due, the actuarial equivalent of the remaining payments shall be paid under Section 25-11-117.1 (1).
(Emphasis added). Section 25-11-117.1, titled “Recipients of additional benefits payable and checks .not yet cashed when beneficiary dies or is disqualified,” reads:
(1) Except .as otherwise .provided in subsection (2) of this section, where benefits aré payable to a designated beneficiary or beneficiaries under this article and the designated beneficiary or beneficiaries as provided by the member on the most recent form filed with the system is deceased or otherwise disqualified at the time such benefits become payable, the following persons, in descending order of precedence, shall be eligible to receive such benefits:
(a) The surviving spouse of the member or retiree;
(b) The children of the member or retiree or their descendants, per stirpes;
(c) The brothers and sisters of the ■ member or retiree or their descendants, per stirpes;
(d) The parents of the member or retiree;
(e) The executor or. administrator on behalf of the member or retiree’s estate;
(f) The persons entitled by law to distribution of the member or retiree’s estate. .
(2) Any monthly benefits payable to a beneficiary who dies prior to cashing his or her final check(s)-.and/or any additional benefits payable pursuant to Section 25-11-112 still, payable, at the death pf a b.eneficiary receiving .monthly; benefits shall be paid as follows: .
(a) The surviving ,-spouse of the bener ficiary;
(b) The children of the beneficiary or their descendants, per stirpes;
(c) The brothers .and sisters of the beneficiary or their descendants, per stirpes;
(d) The parents of the beneficiary;
(e) The executor or administrator on behalf of the beneficiary’s estate;
*458 (f) The persons entitled by law to distribution of the beneficiary’s estate.
(Emphasis added).
¶ 60. Marjorie chose Option 4-B, under section 25-11-115(1). This governs how her benefits are to be paid.
¶ 61. The benefits are first paid to the retirant. Marjorie was entitled to “a reduced retirement allowance” during her life “but with the further guarantee of payments to the named beneficiary or beneficiaries for a specified number of years certain.” Id. (emphasis added). Marjorie was entitled to be paid a monthly benefit during her life, and Marjorie was able to name a person who would be entitled to a “guai’antee of payments” for twenty years. Id,
¶ 62. Next, at the death of the retirant, the benefits are to be paid to the retirant’s designated beneficiary. Id. Marjorie designated Heather to receive the “guarantee of payments.” Heather was paid benefits for approximately eleven years.
¶ 63. At Heather’s death, under Option 4-B, Marjorie could have designated a contingent beneficiary to receive the remaining benefits. She could have named any person, entity, or her estate. She chose not to name a contingent beneficiary.
¶ 64. Because the guaranteed payments were not paid in full, section 25-11-115(1) provided how the remaining benefits would be paid. Option 4-B also provided that if the “retired member [Marjorie] or the last designated beneficiary [Heather] both die before receiving all guaranteed payments due, the actuarial equivalent of the remaining payments shall be paid under Section 25-11-117.1(1).” Miss.Code Ann. § 25-11-115(1).
¶ 65. Therefore, I move to section 25-11-117.1, which is titled, “Persons to whom benefits payable in event of death of designated beneficiary.” Subsection (1) reads:
Except as otherwise provided in subsection (2) of this section, where benefits are payable to a designated beneficiary or beneficiaries under this article and the designated beneficiary or beneficiaries as provided by the member on the most recent form filed with the system is deceased or otherwise disqualified at the time such benefits become payable, the following persons, in descending order of precedence, shall be eligible to receive such benefits:....
The subsection begins with the phrase “[e]xcept as otherwise provided in subsection (2) of this section.” We must consider the effect of this language; we cannot ignore it.
¶ 66. If we consider subsection (1) without the reference to subsection (2), it says: “[W]here benefits are payable to a designated beneficiary or beneficiaries under this article and the designated beneficiary or beneficiaries ... is deceased or otherwise disqualified at the time such benefits become payable —” (Emphasis added). I read this language to say that subsection (1) only applies where the designated beneficiary “is deceased or otherwise disqualified at the time such benefits become payable.” This language specifically looks at the point in time that the retirant dies and the guaranteed payment vests in the designated beneficiary(ies). I am of the opinion that subsection (1) only applies when the designated beneficiaries are dead or disqualified at the time the retirant dies, and then the amount of the guaranteed payments would be paid to the retirant’s heirs based on subsection (1).
¶ 67. Subsection (2) is clear that it applies to any guaranteed benefits vested in the beneficiaries. Subsection (2) reads: “[A]ny monthly benefits payable to a beneficiary who dies prior to cashing his or her final check(s) ... shall be paid as follows .... ” Here, there is no dispute that *459 Heather died before “cashing ... her final checks.” As a result, I am of the opinion that the statutory scheme that controls the payment of the guaranteed 'payments is section 25-11-117.1(2), and the remaining balance should be paid to Kayla.
1168. Because I would reverse and render the judgment of the circuit court, I respectfully dissent.
ISHEE, J., JOINS THIS OPINION. '

. - During the administrative hearing, it was noted that Marjorie’s application for benefits was completed before the statutory change to Option 4-B, which occurred on July 1, 2000. PERS senior policy advisor Bob Rhoads testified as to the effect that the pre-2000-amendment language had on the manner in which PERS paid the $110,163 in remaining benefits. Mr. Rhoads .stated that ."[t]he law was changed in 2000. How we paid the present value is applied prospectively to all. We didn’t segregate if you retired before this date this rule applied; if you retire from and after this date, another rule applies.”